UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JOSE R. PÉREZ-REISLER,

    Plaintiff,

v.

JOSE FIGUEROA-SANCHA, et al.,

    Defendants.

Civil No. 11-1436 (JAF)

**OPINION AND ORDER**

José R. Pérez-Reisler ("Pérez-Reisler" or "Plaintiff") is suing José Figueroa-Sancha ("Figueroa-Sancha"), José Rosa-Carrasquillo ("Rosa-Carrasquillo"), Leovigildo Vázquez ("Vázquez"), Sheraton Puerto Rico Hotel and Casino ("Sheraton"), Melvin Rosa-Cortés ("Rosa-Cortés"), Miguel Mejías ("Mejías"), William Echevarría ("Echevarría"), Luis A. Torres-Vidro ("Torres-Vidro"), Javier Morales-Vega ("Morales-Vega"), Luis Colón-Roque ("Colón-Roque"), Jonathan Machuca ("Machuca"), José Padilla-Montalvo ("Padilla-Montalvo"), and Emilio Pérez-Quiles ("Pérez-Quiles) (collectively "All Defendants"). Sheraton has since been voluntarily dismissed, pending resolution by the remaining parties. (Docket No. 136.) The Puerto Rico Police Department ("PRPD") is a respondent in the case, and the Department of Justice, Commonwealth of Puerto Rico ("Commonwealth") is an interested party. Plaintiff alleges that All Defendants "engaged in excessive use of force, illegal detention, inadequate recruitment, training and supervision in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of Puerto Rico." (Docket No. 1 at 1-2.) He invokes relief from these claims pursuant to

42 U.S.C. §§ 1983 and 1988. (Docket No. 1 at 2.) As to Puerto Rico law, Plaintiff specifically claims violations of Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141, 5142; of Article II of the Constitution of Puerto Rico; and of 1 LPRA §§ 10 and 11. (Docket No. 1 at 11.)

Defendants Figueroa-Sancha, Rosa-Carrasquillo, Vázquez, Rosa-Cortés, Machuca, Padilla-Montalvo, and Pérez-Quiles ("Defendants" for the purposes of this order) filed a motion for summary judgment. (Docket No. 139.) For the reasons below, we grant dismissal of Plaintiff's Fifth-Amendment claim and his Fourteenth-Amendment claim, finding that summary judgment on the other claims is premature. We will hold a conference to schedule further discovery and other matters.

## I.

## **Views on the Facts as They Developed**

The court does not sit in a vacuum. We are members of the larger community. We remember from the events at the time that they were not as clear as they appear on paper. We elect to give some context from local reporting at the time, taken from the Puerto Rico Daily Sun.

Río Piedras students began occupying the flagship university campus on April 21 to protest budget cutbacks. The students demanded "the repeal of Certification 98, which limits and in some cases eliminates tuition waivers for students, guarantees there will be no tuition increases and no privatization of services and/or campuses." Juan A. Hernández, *Division grows among striking UPR students*, Puerto Rico Daily Sun, May 12, 2010, at P3. (Appendix 1, at 2.) By May 12, 2010, ten of the eleven UPR

campuses were on strike. Id. Students also protested outside the university gates on Ponce de León Avenue and at the Golden Mile in Hato Rey. *UPR students take protest outside gates*," Puerto Rico Daily Sun, May 13, 2010, at P1; Juan A. Hernández, *De la Torre: 'We do not have a plan B*," Puerto Rico Daily Sun, May 13, 2010, at P4. (Appendix 2, at 1-2.) On May 13, thousands of UPR students gathered at the Puerto Rico Convention Center and voted to continue the strike. *Far from over: UPR students ratify indefinite strike*, Puerto Rico Daily Sun, May 14, 2010, at P1. (Appendix 3, at 1-3.) By late morning on May 14, the Río Piedras campus was "almost completely surrounded by the Police, riot squads and police cadets," blocking the entrances and preventing anyone from entering or passing items through the gates. Juan A. Hernández , *UPR strike flares as Police move in*, Puerto Rico Daily Sun, May 15, 2010, at P3. (Appendix 4, at 2-3.) There was controversy "when tactical forces police officers prevented strike supporters from handing over food and beverages to students." Xavira Neggers Crescioni, *UPR president says he is confident an accord can be reached*, Puerto Rico Daily Sun, May 17, 2010, at P5. (Appendix 5, at 2.) On May 18, 2010, "[i]sland unions [held] a general work stoppage […] in support of the strike," and about six or eight thousand people gathered in from of the main campus gate. *Support broadens: Unions hold general stoppage today to back striking UPR students*, Puerto Rico Daily Sun, May 18, 2010, at P1 (Appendix 6, at 1-4); José Alvarado Vega, *Massive union support for UPR strike*, Puerto Rico Daily Sun, May 19, 2010, at P3 (Appendix 7, at 2, 4); Juan A. Hernández, *UPR students: support for strike 'impressive*,' Puerto Rico Daily Sun, May 19, 2010 at P5. (Appendix 7, at 3.)

On May 20, 2010, about one-hundred people protested inside the Sheraton Convention Center hotel where Governor Fortuño was attending a political fundraiser. *Riot in Miramar*, Puerto Rico Daily Sun, May 21, 2010, at P1. (Appendix 8, at 1.) The police riot squad intervened using pepper spray and tasers. Juan A. Hernández, *Protesters, Police clash during Fortuño fundraiser*, Puerto Rico Daily Sun, May 21, 2010, at P3. (Appendix 8, at 2.) "The riot that ensued between protestors and the Police inside the Sheraton Convention Center Hotel lobby resulted in some $8,000 in property damages." Id.

## II.

## Facts

When considering a summary judgment motion, we must view all facts in the light most favorable to the non-moving party. Therefore, to the extent that any facts are disputed, the facts set forth below represent Plaintiff's version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where Plaintiff's asserted facts do not properly comply with Local Rules 56(c) and (e), we deem Defendants' properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly). Local Rule 56(c) states that:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph

> of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

Local Rule 56(c). And, Local Rule 56(e) states that:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Local Rule 56(e). Plaintiff fails to follow the letter of the law. For instance, he does not admit, deny or qualify each fact. However, he does point to the number of the fact that he contests and consistently identifies a record citation. (See Docket No. 158.) Therefore, we will accept the submission with a warning to more closely follow the rules in the future. We also note that in Plaintiff's opposing statement of material facts, "opinions by Dr. William T. Gaut, plaintiff's expert" are just that – opinions and not facts. (See Docket No. 155 at 8-18.) Therefore, they will not be included here.

**A.    May 14, 2010, Strike**

Since arriving at the University of Puerto Rico, Río Piedras Campus ("University"), Plaintiff has actively participated in strikes on behalf of students and

workers of the university. (Docket No. 139-1 at 1.) A strike occurred on May 14, 2010, in response to the elimination of scholarships. (Docket No. 139-1 at 2, 18-19; Docket No. 155 at 1.) In response to the strike, the police sealed off the University and established a police perimeter, but students gained control of the gates. (Docket No. 139-1 at 3, 5.) Plaintiff arrived at the strike between 1:00 P.M. and 2:00 P.M., and brought his computer. (Docket No. 139-1 at 4.) His computer contained material for his master's thesis collected from 2007 to 2010, and his backup drive was in the bag with his computer. (Docket No. 139-1 at 7.) Plaintiff said he was unaware that there was an instruction not to enter the campus. (Docket No. 139-1 at 5.) He went to the Social Sciences building. (Docket No. 139-1 at 4.) He alleges that the police offers told him that he could not enter, and one officer pushed him back while two or three others threw him to the floor. Plaintiff alleges that one officer sprayed him in both eyes with pepper spray. (Docket No. 158 at 1.) He was then handcuffed. (Docket No. 139-1 at 5-6.) He alleges that he was not resisting arrest and was not fighting the officers. (Docket No. 155 at 2.) His computer and back-up drive were taken by a policeman. (Docket No. 139-1 at 7-8; Docket No. 158 at 1). Plaintiff never regained his computer. (Docket No. 139-1 at 6.) The police officers involved in the arrest were Machuca, Padilla-Montalvo, and Pérez-Quiles. (Docket No. 155 at 1.) Rosa-Carrasquillo was present at the University strike, but did not recall giving instructions to other police officers. (Docket No. 139-1 at 15.)

Plaintiff was taken to a holding cell. (Docket N0. 158 at 2.) He was then admitted to Centro Médico, through the emergency room, where he required stitches on his head. (Docket No. 139-1 at 13; Docket No. 155 at 3.) He lost eyesight until eight or nine hours

afterward. (Docket No. 155 at 3.) Finally, he was returned to the cell "for hours." (Docket No. 158 at 2.)

B.     **May 20, 2010, Strike**

The students protested against the governor on May 20, 2010, at the Sheraton, again regarding university policies. (Docket No. 139-1 at 9, 16.) Plaintiff joined the picket line outside the hotel. He protested outside for fifteen to twenty minutes and then entered the hotel where students were chanting in the lobby. (Docket No. 139-1 at 9-10.) They were chanting "Que cara, que cara se ha puesto la entrada al Alma Mater, no pueden, no pueden costo de la vida, pobre juventud, no puede estudiar, los ricos quedarán dueños de la Universidad. Mierda es." (Docket No. 139-1 at 10) ("How expensive, how expensive has been the tuition to the Alma Mater, cannot, cannot afford the cost of living, poor youth, cannot study, rich people own the university. This is shit") (translation ours). Plaintiff alleges that at no time did he provoke, physically confront, or threaten anyone. (Docket No. 155 at 5.) When Plaintiff walked towards the front of the Sheraton, he was punched and hit. (Docket No. 139-1 at 11.) Police officers tried to keep him on the ground with the aid of a baton. (Docket No. 139-1 at 11; Docket No. 158 at 3.) He alleges that he was not given any warnings and that he was not told the reason why he was being arrested. (Docket No. 155 at 5.) He broke away and rejoined another line of protesters and the police jumped on top of him and pushed him face-down on the ground. (Docket No. 139-1 at 11.) Rosa-Cortés then tasered him with electric shocks three times and handcuffed him. (Docket No. 139-1 at 12, 25; Docket No. 155 at 5.) He alleges that Rosa-Carrasquillo kicked him in the testicles while he was on the ground and that he lost

feeling in his right thumb. (Docket No. 139-1 at 12, 16.) Vázquez was also at the scene. (Docket No. 154 at 14.) Figueroa-Sancha, the former superintendent of the PRPD, ordered an investigation as to the events that were depicted in the photograph of the protest taken by an El Nuevo Día newspaper journalist. (Docket No. 139-1 at 18-21.)

**C.     Evidentiary Concerns**

Within the context of this summary judgment motion, the parties argue about whether Defendants can use the testimony of Israel Valle-Valle and whether Plaintiff can use Youtube videos as evidence. (Docket No. 154, 169, 174). When considering a summary judgment motion, we must view all facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is not the proper vehicle for evidentiary disputes.

That said, we do not look favorably upon blatant misstatements. Defendants argue that Plaintiff never disclosed "any information as to said videos." (Docket No. 169 at 3.) Plaintiff, however, points us to his initial rule 26 disclosures, dated November 18, 2011, in which he mentions the videos several times and claims to have attached copies. (Docket No. 174-2.)

We will sit down with the parties and lay out a very specific plan for discovery.

**III.**

**Analysis**

Defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). We must decide whether a reasonable jury could find

for Plaintiff in any of his claims when all reasonable inferences from the evidence are drawn in his favor. See Scott v. Harris, 550 U.S. 372, 380 (2007).

### A.   42 U.S.C. §§ 1983 and 1988

Section 1983 states that "[e]very person who, under color of […law] subjects or causes to be subjected, any citizen of the United States […] to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured…." 42 U.S.C. § 1983. Section 1988 allows the court to award attorney's fees to a prevailing plaintiff in such cases. 42 U.S.C. § 1988. In a § 1983 claim, a plaintiff must prove that the defendants acted under color of state law; that the conduct deprived the plaintiff of federally-protected rights, privileges, or immunities; and that the conduct was causally connected to the deprivation. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989). Claims that law enforcement officers used excessive force are frequently brought under § 1983. See e.g., Mlodzinski v. Lewis, 648 F.3d 24 (1st Cir. 2011).

#### 1.   Qualified Immunity

Defendants argue that they are shielded by qualified immunity. Under the doctrine of qualified immunity "police officers are protected from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011) (internal citations omitted). "A right is clearly established if, given the legal contours of the right allegedly violated and the facts of the particular case, a reasonable officer would have understood that his conduct violated that

right."  Eldredge v. Town of Falmouth, MA, 662 F.3d 100 (1st Cir. 2011) (internal citation omitted).  However, the summary judgment standards require that we draw all reasonable inferences in plaintiffs favor, even in the context of qualified immunity. Mlodzinski, 648 F.3d at 28.  When we take plaintiff's allegations as true, we find that a reasonably-competent officer would be on clear notice that pepper spray to the eyes, handcuffs, and force requiring stitches on the head in one situation, and three taser shocks and a kick to the testicles when already handcuffed handcuffs in another situation, were an unconstitutional response to an allegedly non-threatening protestor.  Therefore, we deny qualified immunity at this time, without prejudice of resubmission post-discovery, when Defendants can provide specific facts.

**2.     Supervisory liability**

Defendants also argue that there is no supervisory liability in this case.  In order to prove supervisory liability under § 1983, a plaintiff must prove an "affirmative link between the subordinate officer and the supervisor," also known as causation. Figueroa-Torres v. Toledo-Davila, 232 F. 3d 270, 279 (1st Cir. 2000).  This includes willful blindness, which can be proven by a showing of "(1) a grave risk of harm, (2) defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." Id.  There is no liability for supervisory officials under a theory of *respondeat superior*. Voutour v. Vitale, 761 F.2d 1985, 819 (1st Cir. 1985) (citing Monell v. Department of Social Services, 436 U.S. 658 (1978)).  Supervisory liability under section 1983 only arises if the supervisor's conduct constitutes "supervisory encouragement, condonation, or acquiescence, or gross negligence of the

supervisor amounting to deliberate indifference." <u>Grajales v. Puerto Rico Ports Authority</u>, 682 F.3d 40, 47 (1st Cir. 2012).

Rosa-Carrasquillo was Associate Superintendent of the PRPD from February 2009 until December 2010. He did not supervise the rank police members; did not participate in officers' hiring and recruitment; and did not participate or prepare any protocols or General Orders for the policemen. He did not directly participate in the training decisions. (Docket No. 139-1 at 14.) Figueroa-Sancha, the former superintendent of the PRPD, ordered an investigation as to the events that were depicted in the photograph of the protest taken by a photojournalist at <u>El Nuevo Día</u> newspaper. (Docket No. 139-1 at 18-21.)

Plaintiff has not sufficiently proven deliberate indifference or a direct causal link between the supervisors in the police department and the injuries he suffered. An expert's opinion of a Puerto-Rico-wide study is not sufficient. We withhold judgment on this, but warn that any related charges will be dismissed if plaintiff is unable to allege specific facts post-discovery.

### 3. **Eleventh Amendment immunity**

Defendants also allege that they are entitled to Eleventh Amendment immunity. (Docket No. 139 at 21.) They state that the Commonwealth of Puerto Rico cannot be sued without its consent. (Docket No. 139 at 22.) However, the Commonwealth of Puerto Rico is not a defendant in this case. As for the individual officers, "[a]nyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983," subject to qualified immunity. <u>Filarsky v. Delia</u>, 132 S. Ct. 1657, 1661 (2012) (internal

citations omitted).  Therefore, we deny dismissal on the ground of Eleventh-Amendment immunity.

   **4.      Fourth Amendment**

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV.  The Fourth Amendment is applicable to state officials through the Due Process Clause.  See Wolf v. Colo., 338 U.S. 25, 27-28 (1949) (overruled on other grounds).  Seizure of a person occurs when a reasonable person would not feel "free to leave," "decline the officer's requests," or "otherwise terminate the encounter." Fla. V. Bostick, 501 U.S. 429, 435 (1991) (internal citations omitted).  The parties do not dispute that Plaintiff was seized.

The police have authority to "make a *forcible stop* of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." U.S. v. Place, 462 U.S. 696, 702 (1983).  The Court must ask, "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" noting that "simply good faith on the part of the arresting officer is not enough." Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (internal citations omitted).

A determination of whether the force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted).  Considerations include "the severity of the crime at issue, whether the suspect

poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "Reasonableness" must be "judged from the perspective of a reasonable officer on the scene," at that moment in time. Id. We look only at the objective acts, not the intentions of the officer. Id.

This is a case-specific inquiry. Regarding the severity of the crime at issue, it appears that plaintiff's crimes were "attempting to enter an area clearly restricted" and participating in a protest. (Docket No. 139 at 13.) Plaintiff alleges that he did not pose an immediate threat to the safety of officers or others. (Docket No. 155 at 2, 5.) In the first incident, he alleges that he was not resisting arrest. (Docket No. 155 at 2.) In the second incident, it is clear that he broke away from the police to "get away," which is a factor in favor of the police. (Docket No. 139-1 at 11.) Still, we must engage in a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted). We find that, if the facts are as Plaintiff states, a jury could find that the force used by the police was unreasonable. We deny the motion for summary judgment on this count, without prejudice of resubmission post-discovery.

**5.     Fifth Amendment**

The Fifth Amendment Due Process Clause "applies only to actions of the federal government – not to those of state of local governments." Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007) (internal citations omitted). Likewise, it does not apply to the actions of private individuals. Gerena v. Puerto Rico Legal Services, Inc.,

697 F.2d 477, 499 (1st Cir. 1983).  Because Plaintiff does not claim action by the federal government, this claim must be dismissed.

### 6. **Fourteenth Amendment**

The Fourteenth Amendment establishes that a state shall not "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. Plaintiff cites to a Supreme Court case for his argument that excessive use of force, unlawful detention, and false arrest implicate the Fourteenth Amendment.  (Docket No. 154 at 29.)  However, the Supreme Court held in that very same case that when a plaintiff claims law enforcement officials used excessive force during a seizure, the claim should be "analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Graham v. Connor, 480 U.S. 386, 388 (1989).  We urge counsel to ensure that their cited cases actually stand for the propositions they assert.  This cause of action must be dismissed.

**B.    Puerto Rico Law:  Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141, 5142; Article II of the Constitution of Puerto Rico; and 1 L.P.R.A. §§ 10 and 11**

To argue his claims under Puerto Rico law, Plaintiff merely writes that,

> the acts and omissions of the defendants breached Article 1802 and Article 1803 of the Civil Code of Puerto Rico. Pursuant to the law of Puerto Rico, the acts and omissions of the defendants described herein constitute wrongful detention, excessive use of force, and violation of due process, all in violation of Article II of the Constitution of Puerto Rico and 1 LPRA Sections 10 and 11.

(Docket No. 154 at 31.)

Plaintiff must actually spell out his arguments. As the First Circuit has stated: "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones….a litigant has an obligation to spell out its arguments squarely and distinctly." U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (internal citations omitted). We withhold judgment at this time, but warn that Plaintiff's claims under Puerto Rico law will be dismissed if his post-discovery motions do not properly spell out his arguments.

**C.     The Defendants**

From the facts presented in these motions, the following individuals were personally involved in the incidents: Machuca, Padilla-Montalvo, Pérez-Quiles, Rosa Carasquillo, Rosa-Cortés, and Vázquez. (Docket No. 139-1 at 12, 17, 25; Docket No. 154 at 14, 15; Docket No. 155 at 1, 5.)  The facts presented do not mention the other defendants. Therefore, post-discovery, Figueroa-Sancha, Mejías, Echevarría, Torres-Vidro, Morales-Vega, and Colón-Roque will be dismissed as defendants if there is no further showing made as to their involvement.

**IV.**

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 139) is **GRANTED IN PART**. We dismiss Plaintiff's claims under the Fifth and Fourteenth Amendment, but retain jurisdiction over all other claims. We will hold a Fed. R. Civ. P. 16 conference to schedule further discovery and other matters on **June 30,**

**2014, at 2:00 P.M.** Counsel must appear ready to submit a list of their respective parties' factual witnesses.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 19th day of June, 2014.

<u>S/José Antonio Fusté</u>
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE